**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

STEVEN SPARKS                                                                                          PLAINTIFF

V.                                                     1:13CV00114-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Steven Sparks, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On December 16, 2010, Mr. Sparks protectively filed for DIB and SSI benefits due to lower back problems, arthritis in shoulders and back, degenerative bone disease, and nerve damage in his right ankle. (Tr. 129) Mr. Sparks's claims were denied initially and upon reconsideration. At Mr. Sparks's request, an Administrative Law Judge ("ALJ") held a hearing on August 16, 2012, where Mr. Sparks appeared with his lawyer. (Tr. 25) At the hearing, the ALJ heard testimony from Mr. Sparks and a vocational expert ("VE"). (Tr. 26-41)

The ALJ issued a decision on September 6, 2012, finding that Mr. Sparks was not disabled under the Act. (Tr. 13-20) The Appeals Council denied Mr. Sparks's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Sparks, who was forty-one years old at the time of the hearing, has a ninth grade education. (Tr. 29) He has past relevant work experience as a laborer in poultry, machine operator,

and construction worker. (Tr. 37)

## II. DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Sparks had not engaged in substantial gainful activity since June 1, 2002, and he had the following severe impairments: lower back pain, arthritis, degenerative bone disease, nerve damage, hypertension, fatigue, chronic pain in lower back and hips, and numbness in hands and feet. (Tr. 16) However, the ALJ found that Mr. Sparks did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 16)

According to the ALJ, Mr. Sparks has the residual functional capacity ("RFC") to do light work, except that he could only occasionally perform posture activities such as balance, crouch, stoop, crawl, or kneel; could not climb ropes, ladders, or scaffolds; and could not perform rapid flexion or extension of either wrist. (Tr. 16) The VE testified that the jobs available with these limitations were small products assembler and small parts packer. (Tr. 38)

After considering the VE's testimony, the ALJ determined that Mr. Sparks could perform a significant number of other jobs existing in the national economy, and found that Mr. Sparks was not disabled.

## III. ANALYSIS

### A. Standard of Review

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B.  Mr. Sparks's Arguments for Reversal

Mr. Sparks asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, Mr. Sparks contends that the ALJ (1) used a hypothetical that did not accurately describe Mr. Sparks's impairments; (2) incorrectly found that no examining physician found Plaintiff unable to work; and (3) erred in relying on a nonexamining doctor's opinion. (Doc. No. 11)

#### 1.  ALJ's Hypothetical

Though Mr. Sparks complains about the ALJ's hypothetical, the issue appears to be with the ALJ's credibility finding. Mr. Sparks points out that the hypothetical and RFC were "based largely on his determination that Mr. Sparks was not telling the truth about the severity of his pain and resulting limitations." (Doc. No. 11)

The ALJ properly found that the severity of Mr. Sparks's impairments were not supported by the objective medical records and appeared to be controlled with medication. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (the absence of medical evidence that supports a claimant's

3

subjective complaints is a factor that supports the discounting of such complaints); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling."). For example, from October 16, 2010, through August 2012, Mr. Sparks visited his general practitioner primarily for re-assessment and medication refills. Barring only a few exceptions, notes repeatedly indicated that Mr. Sparks's "symptoms well controlled on current medication." (Tr. 299, 303, 306, 309, 332, 352-353, 357)  The February 2011 notes read "all current medications work well . . . return in 3 months for refill and re-evaluation." (Tr. 311, 314)  By June 2011, his goal was to "do more hunting and fishing" within the next six months, whereas, in the past, his goal had been to do more work around the house with less pain. (Tr. 233, 315)  At that same visit, notes indicate that Mr. Sparks's symptoms were not well controlled, but he had "been out of medications for some time." (Tr. 317)  In September 2011, he reported that his "overall quality of life is good" but he "[c]annot stand for long periods of time." (Tr. 321)  The next month, he reported that his "quality of life is good, and he is able to perform activities as desired." (Tr. 323)  In December 2011, the medications were "controlling his symptoms very well." (Tr. 326)  In August 2012 and at each check-up in between, his symptoms remained "well controlled on current medication."  (Tr. 356)

In addition to the above, neither the nerve conduction study nor MRI performed in November 2008 support the severity of pain alleged by Mr. Sparks.  The nerve conduction study revealed "abnormal studies in the right upper extremity," which would explain why he had been "experiencing some numbness."  (Tr. 203) The ALJ considered this fact when finding that Mr. Sparks could do no rapid flexion or extension of either wrist.  The nerve conduction study also showed a "small herniated disc" that was not "compressing the nerve roots." (Tr. 203)  The doctor recommended only "conservative management, anti-inflammatory steroids, physical therapy, etc."

(Tr. 204) The MRI also noted "small disc bulging" at L3-L4 and L4-L5 with only mildly narrowed neuroforamen; but there was "no definitive nerve root compression." (Tr. 205) *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

Notes from May 2010 to June 2012 repeatedly indicate that Mr. Sparks retained normal strength, range of motion in his extremities, and gait and station. (Tr. 217, 227, 231, 247, 250, 325, 353)

Accordingly, the ALJ's hypothetical and RFC finding were supported by substantial evidence. While there is evidence that Mr. Sparks has limitations related to his impairments, the ALJ's finding that he could perform light work is supported by the record as a whole. *Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.") The ALJ properly included limitations (occasional balancing, crouching, stooping, crawling, kneeling; no climbing ropes, ladders, or scaffolds; and no rapid flexion or extension of either wrist) that were supported by substantial evidence.

2. Unable to Work

Mr. Sparks contends that the ALJ erred when he erroneously found that "No physician has suggested the claimant is unable to work." (Doc. No. 11, Tr. 18) As Mr. Sparks points out, this finding is in error because a note from his doctor's office reads, "Steven Sparks . . . currently a patient of Family Medical Clinic, has been diagnosed as disabled by Dr. Lamoureux. He is currently disabled and has been for the previous two years." (Tr. 290)

Though the ALJ said there was no such evidence in the record, and he does not directly address this note in his finding, the error is harmless for several reasons, all of which weigh against

5

the reliability of the statement. First, the note was signed by the treating physician's "office manager," not the treating physician. Second, the opinion is inconsistent with the medical records. In fact, that same month the note appears to have been written,[3] Mr. Sparks advised his doctor that his "overall quality of life is good." (Tr. 321) In October 2011, he reported that his "quality of life is good, and he is able to perform activities as desired." (Tr. 323) *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (holding that an ALJ may discount or even disregard the opinions of a treating physician, when they are inconsistent or where other medical assessments are better supported).

### 3.   Nonexamining Opinion

Mr. Sparks asserts that the ALJ improperly relied on a nonexamining doctor's findings because the doctor only "reviewed" the records. Additionally, since his opinion was supplied in April 2011, it did not consider the medical records after that date. (Doc. No. 11) While it is true that the ALJ claimed to give the nonexamining doctor's opinion "great weight," two things stand out: (1) the doctor concluded that Mr. Sparks had an RFC of medium work, but the ALJ, in considering all of the evidence, reduced Mr. Sparks's RFC to light work, with some other limitations; (2) as mentioned above, the medical records that came after the April 2011 findings repeatedly found that Mr. Sparks's symptoms were well-controlled with medication. Again, by November 2011, he reported that his "quality of life is good, and he is able to perform activities as desired." (Tr. 323) In 2012, the notes repeatedly indicate that his symptoms are well controlled with medication. (Tr. 326-328, 332, 352-353, 357) Accordingly, this claim is without merit.

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the

---

[3]Though not dated, the note appears to be from September 10, 2011.

record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Mr. Sparks's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 19th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE